**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Jacam Chemical Company 2013, LLC, | ) | **ORDER GRANTING DEFENDANTS'** |
| | ) | **MOTIONS FOR SUMMARY** |
| Plaintiff, | ) | **JUDGMENT AND GRANTING IN** |
| | ) | **PART AND DENYING IN PART** |
| vs. | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Arthur H. Shepard, Jr. and, | ) | |
| GEO Chemicals, LLC, | ) | Case No. 1:19-cv-093 |
| | ) | |
| Defendants. | ) | |

Before the Court are motions for summary judgment filed by the Plaintiff Jacam Chemical

Company 2013, LLC, and Defendants Geo Chemicals, LLC, and Arthur H. Shepard, Jr.  See Doc.

Nos. 149, 152, and 154.  The motions have been fully briefed.  See Doc. Nos. 152-1, 165, 167, 168,

171, 178, 185, 186, 189, and 190.  For the reasons outlined below, the motions are granted in part

and denied in part.


I.     **BACKGROUND**

On May 31, 2019, Jacam Chemical Company 2013, LLC ("Jacam 2013") filed this lawsuit

against its former employee, Arthur H. Shepard, Jr. ("Shepard"), and the company Shepard went to

work for, Geo Chemicals, LLC ("GeoChem"), after he was terminated by Jacam 2013.  See Doc. No.

1.  Jacam 2013's sole member is AES Drilling Fluids Holdings, LLC ("AES") and AES's sole

member is CES Operations, Ltd, ("CES") a Canadian corporation with its principal place of business

in Alberta, Canada.  See Doc. No. 211.  Shepard is a resident of North Dakota.  GeoChem's sole

member is The Sterling Group, LLC.  The Sterling Group LLC's sole member is Peace Creek

Holdings, LLC, which has five members, all irrevocable trusts whose trustees are residents of Kansas. See Doc. No. 211.

According to the complaint, Shepard served as district manager for Jacam Chemical Company, LLC, ("Jacam") and its successor Jacam 2013 in Dickinson, North Dakota, from 2008 until 2019. In 2008, when he began his employment with Jacam, Shepard signed an Employee Agreement with the related entity, HCS, LLC. See Doc. No. 1-1. When Jacam was sold to CES Energy Solutions Corp. for $240 million in 2013, Jacam terminated Shepard's employment effective February 28, 2013. See Doc. No. 1-2. On March 1, 2013, Shepard immediately started work for Jacam's successor, Jacam 2013. Id. When Shepard went to work for Jacam 2013 he signed an Employment Offer and a Code of Business Conduct with Canadian Energy Services L.P. which is now called CES. See Doc. Nos. 1-2, 1-3, and 211. Jacam 2013 remains a subsidiary of CES. Jacam 2013 terminated Shepard's employment on April 16, 2019.

After his termination by Jacam 2013, Shepard went to work for GeoChem, a competitor of Jacam 2013. Gene Zaid is the CEO of GeoChem. Zaid was associated with Jacam and Jacam 2013, including as Jacam 2013's CEO, for nearly 40 years before he left Jacam 2013 in 2017. Zaid formed GeoChem after he left Jacam 2013. Jacam 2013 alleges Shepard recruited Jacam 2013 employees to work for GeoChem, misappropriated its trade secrets, and made false representations regarding Jacam 2013 to its customers. Jacam 2013 alleges Shepard took these actions with GeoChem's knowledge and such actions were in violation of Shepard's obligations under the Employee Agreement and Code of Business Conduct. On May 9, 2019, Jacam 2013 sent a cease and desist letter to Shepard demanding he stop the aforementioned conduct. After Shepard did not respond to Jacam 2013's letter, Jacam 2013 filed this lawsuit against Shepard and GeoChem.

Jacam 2013 alleges claims against Shepard for breach of contract, tortious interference with existing business relations, breach of the duty of loyalty, breach of the North Dakota Uniform Trade Secrets Act, and civil conspiracy.  <u>See</u> Doc. No. 205.[1]  Jacam 2013 has alleged claims against GeoChem for tortious interference with existing contract/ business relations and civil conspiracy. <u>Id.</u>

On July 10, 2019, GeoChem filed an answer to the original complaint, as well as a counterclaim against Jacam and a third-party complaint again CES Energy Solutions, Corp. ("CES"). <u>See</u> Doc. No. 40.  CES was dismissed for lack of personal jurisdiction on November 16, 2020.  <u>See</u> Doc. No. 136.  For its counterclaim against Jacam 2013, GeoChem alleges claims for tortious interference with existing business relationships, tortious interference with prospective business relationships, and civil conspiracy.  <u>See</u> Doc. No. 208.

Shepard has filed two counterclaims against Jacam 2013.  <u>See</u> Doc. No. 207.  The first counterclaim is for a declaratory judgment that the 2008 employee agreement is void and unenforceable and second is for tortious interference with business relations.  All three parties have now moved for summary judgment.  <u>See</u> Doc. Nos. 149, 152, and 154.

II.    <u>LEGAL DISCUSSION</u>

    A.    <u>Defendants' Motions for Summary Judgment</u>

        1.    <u>Breach of Contract Claims</u>

---

[1]The original complaint contained claims for breach of contract related to the solicitation of Jacam 2013's customers (count three) and tortious interference with business relations in relation to Jacam 2013's customers (count four) that were not included in the first amended complaint.  <u>Compare</u> Doc. Nos. 1 and 205.

Shepard contends the breach of contract claims in Count I (asserting breach of contract for disclosure of confidential information) and Count II (asserting breach of contract solicitation of Jacam 2013 employees) fail because there was no contract between Shepherd and Jacam 2013. Jacam 2013 maintains the Employee Agreement (Doc. No. 1-1) and the CES Code of Business Conduct (Doc No. 1-3) are enforceable contracts. Jacam 2013 has abandoned its claim that the Employment Offer (Doc. No. 1-2) constitutes a valid contract by failing to respond to Shepard's summary judgment arguments regarding that document. See Wegmann v. Ethicon, Inc., No. 4:20-CV-00704, 2020 WL 6680893, at *3 (E.D. Mo. Nov. 12, 2020) (noting when a party fails to respond to a motion for summary judgment with respect to certain claims or arguments, that party is deemed to have abandoned the claim). The Court agrees with Shepard that none of these documents, including the Employment Offer, can be considered a legally binding contract. All of the agreements or contracts clearly reveal that Shepard was at all times simply an "at will" employee. None of the documents at issue can be considered contracts of employment.

### a.    Employee Agreement

As a preliminary matter, Jacam 2013 contends the Employee Agreement from 2008 is governed by Kansas law because it contains a choice of law provision calling for the application of Kansas law to the agreement. Shepard maintains North Dakota law applies as doing otherwise would thwart North Dakota's public policy. The Court agrees with Shepard as North Dakota law clearly governs this dispute.

Shepard is a resident of North Dakota and his "at will' employment relationship with Jacam and Jacam 2013 occurred in North Dakota. It is clear that a choice of law provision is ineffective

"when application of another state's law would result in enforcement of a contract that thwarts North Dakota public policy."  Woodmont Co. v. LaSalle Shopping Ctr., LLC, No. 1:17-CV-073, 2020 WL 2857164, at *8 (D.N.D. June 2, 2020).  The choice-of-law or forum selection clause which provides that Kansas law governs is clearly invalid and unenforceable against Shepard, or any other former Jacam 2013 employees who are North Dakotans and were working in North Dakota.  The North Dakota Supreme Court has expressly held that a forum selection clause may be set aside if enforcement would contravene a strong public policy of the forum in which the lawsuit is brought.  Osborne v. Brown & Saenger, Inc., 904 N.W.2d 34, 37 (N.D. 2017).  To enforce the Kansas forum selection in this case clause would clearly violate North Dakota's strong public policy against non-compete agreements. The Employee Agreement contains very restrictive non-competition covenants that are clearly illegal and unenforceable under well-established North Dakota law.  See Doc. No. 1-1, §§ 5.2 and 5.3.  A contract that contravenes North Dakota public policy favoring the right to work is void.  N.D.C.C. § 9-08-06; Osborne, 904 N.W.2d at 38-39 (noting non-compete covenants are void and unenforceable).  "North Dakota law does not recognize as lawful any contract or agreement which is designed to impose a restraint on the exercise of one's lawful profession, trade, or business."  CDI Energy Servs., Inc. v. W. River Pumps, Inc., No. 1:07-CV-085, 2007 WL 4395703, at *6 (D.N.D. Dec. 13, 2007).  The Employee Agreement is clearly such an agreement as the entire focus of the agreement is the non-compete clause.  The Court concludes that North Dakota law, which has a strong public policy against non-compete clauses, governs the Employee Agreement.  To hold otherwise would thwart North Dakota's long-standing public policy.  In so holding the Court grants summary judgment in favor of Shepard on his first counterclaim for declaratory judgment regarding the Employee Agreement.

The legal arguments of Jacam 2013 in support of the non-compete clauses and forum selection clauses are devoid of any merit.   N.D.C.C. § 9-08-06 provides, "A contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void, except: 1. A person that sells the goodwill of a business . . . 2. Partners, members, or shareholders, upon or in anticipation of a dissolution of a partnership, limited liability company, or corporation . . . ." See Osborne, 904 N.W.2d at 38-39 (North Dakota has a "longstanding and strong public policy against non-compete agreements.").  The North Dakota Supreme Court made it crystal clear in *Osborne* that non-compete clauses are void and unenforceable, as is a choice of law or forum selection clauses if such clauses restrain competition by North Dakotans working in North Dakota. The exhaustive efforts undertaken by Jacam 2013 to enforce their illegal non-compete and forum selection clauses against Shepard (and other former employees) is vindictive, unreasonable, and beyond bullish.

Jacam 2013, which was created in 2013, is not a party to the 2008 Employee Agreement between Shepard and HCS, LLC, ("HCS").   See Doc. No. 1-1.  HCS was a separate and distinct entity from Jacam that was "created as a payroll company."   See Doc. No. 173-6.   HCS was dissolved in 2013 when Jacam was bought out by CES.   See Doc. No. 173-7.   Even if HCS and Jacam were considered one and the same, Shepard's employment with Jacam ended on February 28, 2013.  See Doc. No. 1-1.   The Employment Offer makes it clear that Shepard's employment with Jacam was terminated effective February 28, 2013, and he was being offered employment with Jacam 2013 beginning on March 1, 2013.   See Doc. No. 1-2.   No new Employee Agreement or contract was ever executed with Jacam 2013.   Any obligations Shepard owed Jacam under the Employee Agreement from 2008 ended when his employment with Jacam was terminated.   In other

6

words, the Employee Agreement was terminated before Shepard joined Jacam 2013, and on that basis cannot be said to have continued or been assigned to Jacam 2013. Shepard was unquestionably working for Jacam 2013 as an "at will" employee. The Court concludes as a matter of law that the 2008 Employee Agreement is not a valid contract between Jacam 2013 and Shepard, and Jacam 2013 has no legal basis to enforce the agreement.

The Employee Agreement also fails for lack of consideration. Sufficient consideration must support a contract from formation through full performance of the contract. Irish Oil & Gas, Inc. v. Riemer, 794 N.W.2d 715, 720 (N.D. 2011). Failure of consideration occurs when a valid contract has been formed, but the performance bargained for has not been rendered. Id. The Employee Agreement defines consideration as "the opportunity to participate in an Equity Plan in JACAM upon signing this Agreement." See Doc. No. 1-1, ¶ 3.1. There is no evidence Shepard ever received any equity in Jacam during the five years he worked for them or any compensation when Jacam was sold to CES.

Jacam 2013 suggests Shepard's continued employment was adequate consideration for signing the Employee Agreement. However, continued employment cannot form adequate consideration since Shepard was an "at will" employee and the Employee Agreement makes it clear the agreement is not an employment contract. See generally Olson v. Souris River Telecomms. Co-op., Inc., 558 N.W.2d 333, 337 (N.D. 1997) (finding a policy manual that stated it was not a contract did not create an employment contract). The Employee Agreement states that "nothing contained in this Agreement is intended to be, nor shall it be construed or interpreted as, a contract for, or guarantee of, initial and/or continued employment." See Doc. No. 1-1, p. 2. In addition, the Employee Agreement makes no mention of continued employment being consideration for signing

the agreement but instead explicitly cites an equity plan as consideration.  Consequently, the Court finds as a matter of law that the Employee Agreement also fails for lack of consideration.

### b.      Code of Business Conduct

Jacam 2013 also contends the CES Code of Business Conduct constitutes a contract which Shepard breached.  Shepard maintains the Code of Business Conduct is not a contract.

The formation of a contract requires  parties capable of contracting, mutual intent, a lawful object, and consideration.  Bakke v. Magi-Touch Carpet One Floor & Home, Inc., 920 N.W.2d 726, 730 (N.D. 2018); Good Bird v. Twin Buttes Sch. Dist., 733 N.W.2d 601, 605 (N.D. 2007); N.D.C.C. § 9-01-02.  The elements of a claim for breach of contract are as follows: (1) the existence of a contract; (2) breach of that contract; and (3) damages which flow from the breach.  Good Bird, 733 N.W.2d at 605.  A breach of contract occurs when there is nonperformance of a contractual duty when it is due.  Id.

In North Dakota, an employer may create a contract with an employee handbook or personnel policy manual.  Good Bird, 733 N.W.2d at 606.  Employee handbooks, personnel policy manuals, and similar guides to employment policies must be construed as a whole to determine the parties' intent.  Id.  "An explicit and conspicuous disclaimer in an employee personnel policy manual, stating no contract rights exist or the policies are not intended to create contractual rights, demonstrates the employer's intent that the manual is only a guide for the employee."  Dahlberg v. Lutheran Soc. Servs. of North Dakota, 625 N.W.2d 241, 247 (N.D. 2001).

In this case, the Code of Business Conduct signed by Shepard on April 7, 2013, shortly after he began working for Jacam 2013, contains several statements clearly stating that it is not a contract.

See Doc. No. 1-3, pp. 3-9.  The Code of Business Conduct states "[t]his code of business conduct (the "Code") outlines CES' expectations and guidelines in the conduct of its business."  Id. at 3.  It goes on to say "[v]iolation of this Code may result in disciplinary actions up to and including termination."  Id.  On the signature page it provides the following conspicuous disclaimers:

> **EMPLOYMENT IS AT-WILL**. This means that employees have the right to end their work relationship with the Company at any time, for any reason or no reason, with or without cause, warning, or advance notice. The Company has the same right.

> **NOT A CONTRACT OF EMPLOYMENT**. The language used in this policy and any verbal statements made by management are not intended to constitute a contract of employment, either express or implied, nor are they a guarantee of employment for a specific duration or under any specific terms or conditions.

Id. at 8.  Nowhere does the Code of Business Conduct state that it is a contract.  There is no signature line for a company representative to sign the document.  Further, the Code of Business Conduct makes no mention of consideration.  A Code of Business Conduct such as this is only intended to act as guide for the employee.  Jose v. Norwest bank of North Dakota, N.A., 599 N.W.2d 293, 297 (N.D. 1999).  Taking the document as a whole, the Court concludes as a matter of law that there is no evidence of an intent to form a contract.  The Court further concludes, as a matter of law, that the CES Code of Business Conduct was never intended as a contract and did not form a contractual relationship between Jacam 2013 and Shepard.  The relationship between Shepard and Jacam 2013 was always an "at will" employment relationship and nothing more.

### 2.    Tortious Interference with Exisiting Contract/Business Relations

Jacam 2013 contends Shepard and GeoChem tortiously interfered with its contractual relationship with three of its employees by soliciting them to leave Jacam 2013 and go to work for GeoChem.  Tortious interference with contract has four elements: (1) a contract existed; (2) the

9

contract was breached; (3) the defendant instigated the breach; and (4) the defendant did so without justification.  Bismarck Realty Co. v. Folden, 354 N.W.2d 636, 642 (N.D. 1984).  Shepard and GeoChem maintain there was no employment contract between Jacam 2013 and the employees, and there could be no breach of contract because the employees were "at will" employees.

The three employees identified by Jacam 2013 are William Kainz, Ronald Rebel, and Dirk McWhorter.  Kainz, Rebel, and McWhorter were subject to employee agreements that are virtually identical to the one signed by Shepard.  See Doc. Nos. 1-1, 171-28, 171-29, and 171-30.  The Court explained above that the Employee Agreement signed by Shepard was void and unenforceanble.  The same analysis applies to the employee agreements signed by Kainz, Rebel, and McWhorter.  The Court concludes the employee agreements signed by Kainz, Rebel, and McWhorter are void as against North Dakota public policy because they contain covenants not to compete which clearly violate N.D.C.C. § 9-08-06.  See Osborne, 904 N.W.2d at 37-38; see also Doc. No. 176-1, Order of Judge William Herauf in the state case of William Kainz et al. v. Jacam Chemical Company 2013, LLC, issued on May 6, 2021. (the Kansas forum selection clause is unenforceable because the non-compete clause is unenforceable in North Dakota and violates public policy).

More important, the employee agreements contain clear statements in paragraph 1.2 that the agreement is not a contract, the employee is an employee "at will," and that employment could be terminated at any time by either the employer or the employee.  The Court declines Jacam 2013's suggestion to rewrite the agreements to exclude the offending clauses because to do so would eviscerate the agreement and completely change its meaning in ways the Court cannot say the parties would find agreeable.  That the three employees left Jacam 2013 in order to work for a competitor in North Dakota is not a breach of contract.  It is simply free market competition of the kind readily

10

embraced by a right-to-work state like North Dakota.  "[A] contract at will is usually not protected when the defendant's interference with it is based on any legitimate business purpose and no improper means is used, as where one employer hires away employees of another whose contract rights are terminable at will."  Hennum v. City of Medina, 402 N.W.2d 327, 337 (N.D. 1987) (quoting Prosser and Keeton on Torts § 129 (5th ed. 1984).  The record reveals no criminal or fraudulent activity or other improper purpose or means on the part of Shepard or GeoChem in arguably soliciting Kainz, Rebel, and McWhorter to go to work for GeoChem.  The Court concludes as a matter of law that Jacam 2013's tortious interference with contract claim fails because the three employees did not have employment contracts with Jacam 2013 and, even if the employment agreements were considered contracts, there was no breach since all three were clearly "at will" employees and Shepard and GeoChem did not act with an improper purpose.

### 3.  Duty of Loyalty

In its complaint, Jacam 2013 contends Shepard breached the duty of loyalty he owed to Jacam 2013 both during and after his employment with Jacam 2013 came to an end.  Shepard maintains he did not breach any duty of loyalty to Jacam 2013 because the acts Jacam 2013 complains of occurred after he was terminated, and North Dakota law does not impose any duty of loyalty on a former employee.

North Dakota law "prohibits employees from soliciting their employer's customers while still working for that employer."  Aggreko, LLC v. Barreto, No. 1:16-CV-353, 2017 WL 963170, at *3 (D.N.D. Mar. 13, 2017); see also N.D.C.C. § 34-02-14 ("[a]n employee who has any business to transact on the employee's own account similar to that entrusted to the employee by the employee's

11

employer shall give the latter the preference always").  The duty of loyalty is limited to the solicitation of the employer's clients and customers during the course of employment.  Warner & Co. v. Solberg, 634 N.W.2d 65, 72 (N.D. 2001).  North Dakota law prohibits restraints on solicitation of customers after employment ceases.  Warner & Co., 634 N.W.2d at 73. (citing N.D.C.C. § 9-08-06).  The duty of loyalty an employee owes his employer ends when the employment relationship ends. Id.; CDI Energy Serv., Inc. v. West River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009) (noting any duty of loyalty is limited to the duration of the employment).  Thus, insofar as Jacam 2013 contends Shepard owed Jacam 2013 a duty of loyalty after his employment ended, the claim fails as a matter of law.

The evidence Shepard solicited Jacam 2013's employees while he was employed by Jacam 2013 is limited to one vague email exchange that is subject to multiple interpretations and insufficient to create a triable issue.  See Doc. No. 171-7.  Jacam 2013 has not put forth any credible evidence that Shepard solicited Jacam 2013's clients or customers while he was an "at will" employee of Jacam 2013.  The Court finds the claim for breach of the duty of loyalty fails as a matter of law.

### 4.   Trade Secrets

In the complaint, Jacam 2013 contends Shepard misappropriated its trade secrets while he was employed by Jacam 2013 and used and/or disclosed the trade secrets in order to compete with Jacam 2013 after his employment with Jacam 2013 was terminated.  Jacam 2013 has not brought a trade secrets claim against GeoChem.  See Doc. No. 205, pp. 19-20. Shepard contends the

information which Jacam 2013 considers to be trade secrets are not in fact trade secrets and were not kept confidential by Jacam 2013.

The North Dakota Uniform Trade Secrets Act ("UTSA") specifically "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." N.D.C.C. § 47–25.1–07(1). North Dakota's adoption of the UTSA prevents a plaintiff from merely restating trade secret claims as separate tort claims. See LexMac Energy, L.P. v. Macquarie Bank Ltd., No. 4:08-CV-048, 2012 WL 12831934, at *1 (D.N.D. Nov. 14, 2012). To the degree a plaintiff seeks to recover under different tort causes of action for the same conduct alleged in the misappropriation of trade secrets claim, those tort claims are preempted. Id. To the extent Jacam 2013 relies upon the same conduct to support its UTSA claim and any other claim, the other claims are displaced by the UTSA claim.

To establish a claim of misappropriation of a trade secret, the plaintiff must establish: "(1) that the information at issue is a trade secret; and (2) that the trade secret was misappropriated." N.D.C.C. § 47-25.1-03. North Dakota law defines trade secret as follows:

"Trade Secrets" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

a.    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b.    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.D.C.C. § 47-25.1-01(4).

"Misappropriation" is defined as:

a.    Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    b.    Disclosure or use of a trade secret of another without express or implied consent by a person who:

        (1)    Used improper means to acquire knowledge of the trade secret;

        (2)    At the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

            (a)    Derived from or through a person who had utilized improper means to acquire it;

            (b)    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

            (c)    Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

        (3)    Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

N.D.C.C. § 47-25.1-01(2).

The trade secret information Jacam 2013 has identified in support of its UTSA claim is pricing information relating to three of its customers which it contends Shepard misappropriated and used to his benefit. The pricing information was for Jacam 2013 customers Slawson Exploration Company, Inc., Scout Energy Management LLC, and Sinclair Oil Corporation. The contention is that Shepard obtained this information from Jacam 2013 employees after he was terminated by Jacam 2013, and GeoChem used the information to underbid Jacam 2013. The question is whether pricing information is a trade secret and whether Jacam 2013 took reasonable measures to keep its pricing information secret.

The North Dakota Supreme Court has held that North Dakota's definition of trade secrets is broad enough to include "price and volume data." N. States Power Co. v. N.D. Pub. Serv. Comm'n,

502 N.W.2d 240, 243 (N.D. 1993) (noting "price information and related data may constitute a trade secret'). In this case, the pricing information has an "independent economic value" as the information was relevant for bidding purposes and GeoChem's possession of it allowed it to underbid Jacam 2013. If the information was not valuable, Shepard would not have sought it out. The Court concludes the pricing information and the other information obtained by Shepard can arguably be considered a trade secret, but only if reasonable efforts were made to keep it secret. See N.D.C.C. § 47-25.1-01(4)(b).

Shepard contends Jacam 2013 did not keep the pricing information private as it was shared with its prospective clients, and Jacam 2013 did not require its prospective clients to sign confidentiality agreements. Jacam 2013 contend the master service agreements it had with Slawson Exploration and Scout Energy Management and its employee agreements with Shepard and Kainz, demonstrate it made reasonable efforts to keep its pricing information secret.

Jacam 2013's citation of the Shepard and Kainz employee agreements is unavailing as those agreements did not in any way restrain its customers, and Shepard's agreement was no longer in effect when he sought out the pricing information from his former coworkers at Jacam 2013. Kainz arguably had an obligation to keep Jacam 2013's pricing information confidential while he was employed by Jacam 2013, but he is not a defendant in this case. The Scout Energy and Slawson Exploration proposals themselves contain no requirement that the proposals be kept secret or confidential. See Doc. Nos. 148-13, 148-15, and 187-2. Jacam 2013 did not produce any master service agreement or confidentiality agreement with Sinclair Oil Corporation as evidence of its actions to keep its pricing information confidential.

Jacam 2013 does not cite to any particular paragraph in the Scout Energy and Slawson Exploration master service agreements in support of its argument.  <u>See</u> Doc. Nos. 171-36 and 171-37.  A review of the Scout Energy master service agreements finds it does not contain any clause which pertains to secrecy or confidentiality.  <u>See</u> Doc. No. 171-37.  The Slawson Exploration master service agreement contains a paragraph entitled "CONFIDENTIAL INFORMATION" which provides as follows:

> Information obtained by the parties as a result of their performance of this Contract, including, but not limited to data collected, reports and materials prepared by the parties, information about either party's business and the work, depth, formations penetrated, the results of coring, testing and surveying, shall be considered confidential and shall (i) be held in strict confidence, (ii) not be disclosed to any person, corporation, partnership, limited partnership, limited liability company or other entity without the express written consent of the other party, and (iii) not be used for a party's own business or benefit without the express written consent of the other party.  However, nothing in this provision shall be construed to mean that a party cannot use its own information.

<u>See</u> Doc. No. 171-37, ¶ 15.0.  This language is vague and generic and makes no reference to pricing information or proposals.  The master service agreement was signed in 2011 and was entered into between Jacam and Slawson Exploration.  It makes no mention of Jacam 2013.  Jacam 2013 does not explain how the language from a 2011 master service agreement protects from disclosure the pricing information contained in a 2019 pricing proposal made to Slawson Exploration by Jacam 2013 through Burning Feathers Oilfield Services, LLC, a company Jacam 2013 works with so that it can work on the Fort Berthold Indian Reservation.  There is nothing in the record suggesting Burning Feathers Oilfield Services, LLC was required by Jacam 2013 to keep its proposal confidential.

The record also reveals that Jacam 2013 did not undertake any efforts to keep its pricing information as to Sinclair Oil Corporation and Scout Energy secret.  Its efforts as to Slawson

Exploration can only be described as minimal.  The record reveals the pricing information was readily obtainable from Jacam 2013's prospective clients.  GeoChem's pricing information was readily available as well.  Slawson Exploration offered to continue working with Jacam 2013 if it would match GeoChem's price.  See Doc. No. 171, ¶ 26.  Jacam 2013 agreed, matched GeoChem's price, and retained Slawson Exploration as a client.  Id.  Information that is not kept secret cannot qualify as a trade secret under N.D.C.C. § 47-25.1-01(4)(b).  The Court concludes as a matter of law that Jacam 2013 failed to undertake reasonable efforts to keep its pricing information confidential.  Consequently, the pricing information cannot be considered a trade secret and Jacam 2013's UTSA claim fails.

### 5.   Civil Conspiracy

In the complaint, Jacam 2013 alleges Shepard and GeoChem conspired to unlawfully solicit Jacam 2013's employees and use Jacam 2013's confidential information and trade secrets for their own benefit.  Both Shepard and GeoChem have moved for summary judgment citing a lack of evidence to support the theory and the failure of the underlying torts upon which the claim is based.

"A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s].'"  Peterson v. N. Dakota Univ. Sys., 678 N.W.2d 163, 174 (N.D. 2004) (quoting Hurt v. Freeland, 589 N.W.2d 551, 560 (N.D. 1999).  The major difference between a criminal conspiracy and a civil conspiracy is that in a civil conspiracy damages, and not the agreement, are the essence of the conspiracy.  Hurt, 589 N.W.2d at 560.  Generally, the underlying

unlawful act must itself be tortious to maintain a claim for civil conspiracy.  Burris Carpet Plus, Inc. v. Burris, 785 N.W.2d 164, 179 (N.D. 2010).  "Dismissal of the underlying tort claim defeats the related claim for civil conspiracy." Id.  A corporation cannot conspire with itself through its agents. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1156 (8th Cir.1983); Macquarie Bank Ltd. v. Knickel, 723 F. Supp. 2d 1161, 1192–93 (D.N.D. 2010), aff'd, 793 F.3d 926 (8th Cir. 2015).

Applying these principles to the case at hand necessitates the dismissal of Jacam 2013's claim for civil conspiracy against GeoChem and Shepard.  As explained above, all the underlying tort claims fail and thus the claim for civil conspiracy fails.  Any actions taken by Shepard while in the employ of GeoChem, which began on or about April 17, 2019, could not support a claim for civil conspiracy because a corporation cannot conspire with itself through its agents.  All the text message exchanges Jacam 2013 points to in support of its civil conspiracy claim occurred after Jacam 2013 fired Shepard on April 16, 2019.  See Doc. Nos. 171-12, 171-13, 171-14, 171-15, 171-20, and 171-43.  There is scant evidence Shepard took any actions to solicit Jacam 2013's employees while he was employed by Jacam 2013.  As the Court explained above in relation to the duty of loyalty claim, doing so may be grounds for termination but it is not actionable.  Nor is there evidence of an agreement between GeoChem and Shepard to inflict a wrong on Jacam 2013 through the use of unlawful acts or unlawful means.  Shepard was an "at will" employee of Jacam 2013 before he was fired and went to work for the competitor GeoChem.  Competition is not unlawful and neither is offering a potential customer a better product, lower price, or better service.  Further, that Shepard may have been in communication with GeoChem trying to secure a better employment opportunity while employed by Jacam 2013 is not unlawful.  Jacam 2013's claim for civil conspiracy fails as a matter of law.

### B.    JACAM 2013'S MOTION FOR SUMMARY JUDGMENT

#### 1.    Tortious Intereference

Jacam 2013 contends GeoChem and Shepard have produced no admissible evidence to support their claims for tortious interference. Jacam 2013 also contends that its alleged conduct was not independently tortious. Shepard and GeoChem contend otherwise. The Court is not convinced that all of the evidence Shepard and GeoChem point to in support of their claims is inadmissible hearsay because much of it is likely subject to the party-opponent exception. However, the Court finds as a matter of law that there is no credible evidence of conduct on the part of Jacam 2013 that can be considered independently tortious.

To prevail on their counterclaims for tortious interference with business relationships, GeoChem and Shepard must establish: (1) the existence of a valid business relationship or expectancy; (2) knowledge by Jacam 2013 of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by Jacam 2013; (4) proof that the interference caused the harm sustained; and (5) actual damages to GeoChem and Shepard. Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc., 628 N.W.2d 707, 717 (N.D. 2001). By independently tortious, the North Dakota Supreme Court means that a plaintiff must be able to demonstrate that the defendant's conduct would be actionable under a recognized tort. Id.; Bala v. Stenehjem, 671 F. Supp. 2d 1067, 1107 (D.N.D. 2009). Because they cannot meet this burden, Jacam 2013 is entitled to judgment as a matter of law.

Shepard contends Jacam 2013 threatened competitors and defamed him but does not actually cite to any credible evidence in the record which would support this assertion. See Doc. No. 168, pp. 15-18. The Court finds nothing in the emails cited by Shepard that can be described as

independently tortious.  See Doc. Nos. 169-10 and 169-11.  Puffing, belief, and opinion are not actionable torts and competition for business is a protected right.  See Smith Enterprises, Inc. v. In-Touch Phone Cards, Inc., 685 N.W.2d 741, 747 (N.D. 2004).  Jacam 2013's opinion as to the legal validity of its employment and non-compete agreements was inaccurate but does not fall into the category of fraudulent or defamatory.  Trade 'N Post, L.L.C., 628 N.W.2d at 720.  The filing of a lawsuit or entering into a stipulation are not actionable either.

GeoChem contends certain statements by Jacam 2013 employees were false, defamatory, and independently tortious.  The Court has carefully reviewed all of the evidence of tortious interference submitted by GeoChem and concludes there is nothing in the referenced exhibits which could be considered independently tortious.  See Doc. Nos. 167-1, pp. 37-41, 55-58, 62-67; 167-2; 167-4; 167-5; 167-6; 167-8; 167-9.  Most of the communications involve Jacam 2013 telling prospective clients the non-compete clause in Shepard's employee agreement was valid and enforceable.  Such a communication is not false because a non-compete agreement did exist, albeit between Jacam and Shepard rather than Jacam 2013 and Shepard.  Suggesting the non-compete clause in the agreement was legally valid is a self-serving expression of an ill-advised lay opinion and not in and of itself actionable.  Legal opinions often differ, especially when those opinion are offered by lay persons whose knowledge of the law is suspect at best.  The Court concludes as a matter of law that expressing such an opinion is not independently tortious, nor is threatening litigation.  The conduct and statements of Jacam 2013 upper management is without question retaliatory, spiteful, vindictive, and unrelentingly bullish in nature, but not actionable based on the record before the Court.

Some of the troubling evidence put forward by GeoChem is that Shepard testified in his deposition that a Scout Energy employee told him that a Jacam 2013 employee told some Scout

Energy employees over supper that Shepard was hacking into Jacam 2013's computer system and stealing proposals and that he was likely going to jail over it.  See Doc. No. 167-1, p. 66.  Shepard's testimony is uncorroborated.  In addition, there is no evidence GeoChem lost any business as a result of the statement which Shepard himself admits is preposterous given his lack of computer knowledge.  See Doc. No. 163, p. 67.  Any lost business with Scout Energy was attributed to their fear of litigation with the very combative and litigious Jacam 2013.  See Doc. No. 163, pp. 64 and 107-08.  It is not enough to show a mere possibility of loss, a plaintiff "must show they would have obtained the economic benefit in the absence of the interference."  Bertsch v. Duemeland, 639 N.W.2d 455, 462 (N.D. 2002).  The Court finds GeoChem's evidence insufficient to create a genuine issue of material fact for trial.

Jacam 2013 and GeoChem were and are business competitors who both believe they are better than the other at what they do in the oil and gas business, a business known for sharp competition.  Statements which are merely sharp or unfair, such as the ones made in this case, are not actionable.  Trade 'N Post, L.L.C., 628 N.W.2d at 720.  Consequently, the Defendants' counterclaims for tortious interference with business relations fail as a matter of law.

### 2.    Civil Conspiracy

GeoChem contends Jacam 2013 engaged in a civil conspiracy in that it conspired with CES, its parent corporation, to harm GeoChem.  Jacam 2013 contends a parent corporation cannot conspire with its subsidiary.  It is undisputed that Jacam 2013 is a wholly-owned subsidiary of CES.

As the Court explained above in relation to Jacam 2013's civil conspiracy claim, under North Dakota law, "a civil conspiracy is 'a combination of two or more persons acting in concert to commit

21

an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage.'" Hurt, 589 N.W.2d at 560.  While the North Dakota Supreme Court has never clearly addressed the issue, the Eighth Circuit Court of Appeals has consistently held that a parent corporation and its subsidiary cannot conspire together.  See Palm Beach Polo, Inc. v. Dickinson Fin. Corp., 221 F.3d 1343 (8th Cir. 2000) (unpublished opinion affirming summary judgment on conspiracy claims because "a parent and its subsidiary cannot conspire"); City of Mt. Pleasant v. Assoc. Elec. Co-Op., Inc., 838 F.2d 268, 274-77 (8th Cir. 1988) (noting a corporation and its wholly owned subsidiary corporation cannot conspire with one another because a conspiracy requires a plurality of actors and related entities cannot supply such a plurality); Fogie v. Thorn Americas, Inc., 190 F.3d 889, 898 (8th Cir. 1999) (noting "a parent corporation and its wholly owned subsidiaries are legally incapable of forming a conspiracy with one another"); Davidson & Schaaff, Inc. v. Liberty Nat. Fire Ins. Co., 69 F.3d 868, 871 (8th Cir. 1995) ("two subsidiaries of the same parent cannot conspire"); Cross v. General Motors Corp., 721 F.2d 1152, 1156 (8th Cir. 1983) (a corporation and its agents are a single entity and a corporation cannot conspire with itself).

The suggestion by GeoChem that the rule that a parent corporation cannot conspire with its subsidiary only applies in anti-trust or RICO actions is unpersuasive.  The principle is the same no matter the nature of the conspiracy.  As the Supreme Court explained in the seminal case on the issue, "a parent and its wholly owned subsidiary have a complete unity of interest.  Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771 (1984).  The Court predicts the North Dakota Supreme Court would agree with the

highly persuasive case law from the United States Supreme Court and  Eighth Circuit Court of Appeals.  In addition, while GeoChem has produced evidence of alleged bad acts on the part of Jacam 2013, it has produced no evidence of a conspiracy between CES and Jacam 2013, and no evidence that CES was actually involved in the alleged conspiracy.  There is no underlying tort to support the conspiracy claim as the Court has dismissed GeoChem's claim for tortious interference with business relationships.  The Court concludes that GeoChem's civil conspiracy claim fails as a matter of law.

### 3.    Declaratory Judgment

Jacam 2013 seeks summary judgment on Shepard's declaratory judgment counterclaim wherein he asks the Court to declare the Employee Agreement void on public policy grounds.  The Court has already addressed this issue and concluded as a matter of law that the Employee Agreement is void and unenforceable based upon North Dakota public policy which strongly disfavors non-compete agreements.  See supra.  Section II(A)(1)(a).  Thus, Jacam 2013's motion for summary judgment on this issue is denied.

### 4.    Affirmative Defenses

Jacam 2013 has also moved for summary judgment on Shepard's and GeoChem's affirmative defenses.  GeoChem is not opposed to a dismissal of its affirmative defenses of laches, waiver, estoppel, and unclean hands and Jacam 2013's motion is granted as to these defenses.  As for the disputed affirmatives defenses, the Court finds it unnecessary to issue a ruling as the Court's grant of summary judgment on the substantive issues leaves no claims for trial.

III.     **CONCLUSION**

For the reasons set forth above, GeoChem's motion (Doc. No. 149) is **GRANTED**.  Jacam 2013's motion (Doc No. 152) is **GRANTED in part and DENIED in part** as explained herein. Shepard's motion (Doc. No. 154) is **GRANTED**.  Shepard's motion for hearing is **DENIED**.  The Court further orders and declares that the Employee Agreement (Doc. No. 1-1) is void and unenforceable as against public policy and unenforceable under North Dakota law.

**IT IS SO ORDERED.**

Dated this 3rd day of January, 2023.

/s/  Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court